**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| CJ'S POWER SYSTEMS, INC., and PARAMOUNT POWER, INC.<br>Plaintiffs,<br>v.<br>SANTO MARINO, JR., CAVAN ELECTRIC, INC., and AUBREY EDGE,<br>Defendants. | Case No.: 3:26-cv-01244-JEP-SJH |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**

## INTRODUCTION

Defendants' renewed motion is far narrower than its predecessor. It does not challenge a single claim against Santo Marino, Jr. — the defendant who took Plaintiffs' confidential compilations, solicited their employees, and went to work for their competitor. Counts IV, V, VI, X, XI, XII, and XIII are unchallenged. Nor does the motion renew Defendants' contention that Plaintiffs failed to identify their trade secrets with particularity, abandoned after the amended complaint supplied dated, specific acts of misappropriation. (Doc. 16 ¶¶ 59–63, 100, 121.)

What remains is, in substance, a motion to dismiss Aubrey Edge. Every dismissal ground is directed at Edge, with Cavan joined only on Counts IX and XIII-A. The motion's organizing theme is that Edge did nothing but receive a letter. That is not what the amended complaint alleges. It alleges that

Plaintiffs wrote to Edge personally, identifying Marino's covenants, his documented breaches, and the remediation demanded; that Edge was given a deadline to act in his ownership capacity; that he declined; and that he then directed and authorized Cavan to keep employing Marino and using his qualifying-agent license against Plaintiffs. (Doc. 16 ¶¶ 79–87, 155–58, 166.)

## MATTERS RESOLVED AT THE OUTSET

**Count II.** Count II seeks injunctive relief under the DTSA, 18 U.S.C. § 1836(b)(3)(A), and rises or falls with Count I. Plaintiffs do not oppose treating it as subsumed within Count I, without prejudice to the injunctive relief sought in Count I and the Prayer for Relief.

**Count IX, in part.** Plaintiffs withdraw the breach-of-contract component of Count IX; that theory is pleaded, and properly pleaded, as tortious interference in Count VII. The aiding-and-abetting component is addressed in Part III. Dismissal "with prejudice" would serve no purpose as to a theory Plaintiffs are not pursuing.

**Count XIII-A.** Plaintiffs withdraw Count XIII-A, their alternative unjust enrichment count against Cavan and Edge. The disgorgement it seeks is available on the trade secret claims themselves, which reach "the unjust enrichment caused by misappropriation." FLA. STAT. § 688.004(1). Count XIII, pleaded in the alternative against Marino, is unaffected. Defendants' fourth ground and their displacement argument as to Count XIII-A therefore

require no response.[1]

## LEGAL STANDARD

On a Rule 12(b)(6) motion the Court accepts the complaint's well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a probability requirement"; the complaint need only give fair notice of a claim plausible on its face. *Iqbal*, 556 U.S. at 678.

Motions to strike under Rule 12(f) are disfavored and granted only where the challenged matter has no possible relation to the controversy and would prejudice the movant. *United States ex rel. Sedona Partners LLC v. Able Moving & Storage Inc.*, 146 F.4th 1032, 1044 (11th Cir. 2025).

## ARGUMENT

### I. Counts VII and VIII State Tortious Interference Claims Against Edge.

#### A. A corporate officer is personally liable for a tort he directs or authorizes.

Defendants frame their motion as a challenge to Edge's personal participation. But Florida law holds a corporate officer or owner personally responsible for a tort he commits, directs, authorizes, sanctions, or participates

[1]To the extent the Court prefers that the operative pleading be conformed to these withdrawals rather than noted on the record, Plaintiffs will promptly file an amended complaint omitting Count XIII-A and the breach-of-contract component of Count IX, upon the Court's instruction and without seeking any other substantive amendment.

in:

> One purpose of the corporate fiction is to insulate stockholders from liability for corporate acts; however, officers of a corporation are no less personally responsible for their tortious acts by virtue of those acts having been performed in the corporate name.

*Adams v. Brickell Townhouse, Inc.*, 388 So. 2d 1279, 1280 (Fla. 3d DCA 1980). *Adams* further holds that a plaintiff need not plead facts sufficient to pierce the corporate veil, because veil-piercing addresses a shareholder's liability for the corporation's acts, not an officer's liability for his own torts. *Id.; accord White-Wilson Med. Ctr. v. Dayta Consultants, Inc.*, 486 So. 2d 659 (Fla. 1st DCA 1986). The Eleventh Circuit is in accord: "personal participation by a corporate employee, officer, or director in the wrongful activities of a corporation is sufficient to make the individual, as well as the corporation, substantively liable for a tort." *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 851 (11th Cir. 1988).

### B. The amended complaint pleads Edge's direction and authorization.

Defendants say the amended complaint alleges only ownership, notice, and inaction. It alleges considerably more, and the allegations are specific and dated. On March 3, 2026, Plaintiffs wrote directly to Edge at his personal email address, addressing him as Cavan's principal owner and attaching the prior cease-and-desist correspondence. The letter identified the covenants, Marino's documented breaches — including the solicitation and hiring of Brandon

Vallario — and the remediation demanded, and set a March 11, 2026 deadline for Edge to act in his ownership capacity. Plaintiffs followed up with Edge on March 10. Edge did not remediate; counsel instead demanded that Plaintiffs cease communicating with Cavan's officers. (Doc. 16 ¶¶ 79–83.)

Paragraph 84 then alleges that Edge "intentionally elected, authorized, directed, and ratified Cavan's continued employment of Marino as a qualifying agent, consultant, and/or employee in conscious and willful disregard of Plaintiffs' contractual rights." That is not a passive recipient of correspondence. It is a decision by an identified person, at an identified time, after written notice, to continue conduct Plaintiffs had demanded he stop — direction, authorization, and ratification, the conduct for which Florida law holds an officer personally responsible.

### C. Defendants' own authorities state the rule Plaintiffs rely on.

Defendants cite *McElveen v. Peeler*, 544 So. 2d 270 (Fla. 1st DCA 1989), and *Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363 (Fla. 4th DCA 1981), for the proposition that personal participation is required. Plaintiffs agree. Both, however, reversed the dismissal of an individual officer.

*Orlovsky* rejected a managing officer's contention that he could not, "as a mere officer," be held liable: an officer who "commits or participates in the commission of a tort, whether or not it is also by or for the corporation, . . . is

liable to third persons injured thereby," because a contrary rule "would enable a director or officer of a corporation to perpetrate flagrant injuries and escape liability behind the shield of his representative character." 405 So. 2d at 1364. *McElveen* applied that rule to pure acquiescence: a corporate president alleged only to have "never objected" to a child's presence among the tire piles. That "clearly alleges that Peeler personally participated," and his dismissal was reversed. 544 So. 2d at 272.

If failing to object states a claim, the election, authorization, direction, and ratification alleged at ¶ 84 — after dated written notice and a deadline — certainly states one.

Defendants' remaining argument — that Edge's expected benefit was merely the derivative return any owner receives — attacks an element the law does not impose. Under *Adams* and *Orlovsky*, liability turns on participation in the tort, not on a benefit distinct from the corporation's.

## II. Counts I and III State Trade Secret Claims Against Edge.

### A. "Use" is construed broadly and does not require personal handling.

Defendants read the Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secrets Act ("FUTSA") to require that a defendant personally handle a document — that Edge cannot be liable because he never "touched a document, opened a file, or read a customer list." (Doc. 18 at 7–8.) Neither statute says that.

Neither statute defines "use," so courts give the term its ordinary meaning and look to the Restatement (Third) of Unfair Competition. *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 909 (3d Cir. 2021). The Eleventh Circuit answered the question under FUTSA in a decision Defendants themselves relied on in their first motion: "the bar for what counts as 'use' of a trade secret is generally low," and "[a]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1313 (11th Cir. 2020).

*Compulife* further confirms that FUTSA describes several varieties of use-misappropriation, not all of which depend on an external duty running to the plaintiff: "Even assuming that the defendants had no external 'duty' not to use Compulife's trade secret, they nonetheless may have used the secret in violation of the statute." *Id.*

This District has applied that standard on a thinner record. In *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1142 (M.D. Fla. 2007), the court denied summary judgment because the defendants had "not met their burden of demonstrating that no use of the information took place," where a competing firm had held one misappropriated item for nineteen days. If that record survived summary judgment, the sustained exploitation Plaintiffs allege cannot be resolved against them on the pleadings. The same

standard governs Count I. *Compulife*, 959 F.3d at 1311 n.13.

That standard is satisfied by exploitation, not by touch. Cavan is alleged to have run a competing electrical contracting business using Plaintiffs' customer and job ledgers, pricing histories, vendor lists, and bid files — through Marino, whom Edge kept on. Whether Edge personally opened the spreadsheets is beside the point. *See also PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383–88 (2000) (holding directors personally liable under a materially identical provision where they "used, through the corporation," the trade secrets).

**B. The statutes contemplate precisely this: knowledge supplied by notice.**

Defendants characterize Plaintiffs' theory as imposing liability "upon receipt of a demand letter." That mistakes the statutory scheme for an absurdity. FUTSA reaches a person who uses a trade secret without consent where, at the time of use, he "knew or had reason to know" that his knowledge was "[d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." FLA. STAT. § 688.002(2)(b)2.c.; *accord* 18 U.S.C. § 1839(5)(B)(ii)(III); *Compulife*, 959 F.3d at 1312.

That prong fits this case precisely. The amended complaint alleges that Marino owed Plaintiffs written duties of confidentiality and limited use under the NDA and the Non-Compete Agreement, and that Cavan's acquisition and use came "through Marino." Paragraph 99(c) does not stand alone: the

incorporated March 3 Edge Letter supplies Edge's knowledge, and paragraph 120 alleges that "after personally receiving" it, Edge "knowingly directed, authorized, and ratified Cavan's continued use of Plaintiffs' trade secrets through Marino." Knowledge is pleaded by a document; direction is pleaded as an act. Knowledge *at the time of use* is what the statute makes operative. Continued exploitation after notice is the paradigm case these statutes reach.

As shown in Part I, Edge's direction of continued use independently reaches him personally. *Adams*, 388 So. 2d at 1280. Defendants cite no trade secret decision at all. *McElveen* and *Orlovsky* do not construe the DTSA or FUTSA, and both reversed the dismissal of an individual officer. Neither holds that a principal who knowingly directs his company's continued exploitation of another's trade secrets escapes liability because he did not personally open the file.

## III. Count IX States a Claim for Aiding and Abetting Breach of Fiduciary Duty.

### A. Defendants did not move against Count XII, which pleads the predicate breach.

Defendants argue that no primary breach of fiduciary duty has been pleaded. But Count XII pleads that claim — breach of the duty of loyalty against Marino — and Defendants have not moved to dismiss it. They cannot leave the predicate unchallenged and simultaneously contend it does not exist.

### B. An employee's duty of loyalty arises by operation of law, and Count IX pleads its breach.

Defendants' contention that Marino's duties are only contractual is incorrect. An employee "may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment." *Furmanite*, 506 F. Supp. 2d at 1149. The duty attaches to the employment relationship itself: "[a]n employee does not have to be managerial to have this duty of loyalty." *Id.* And it is "independent of the employment contract." *Carl Domino, Inc. v. Dixon*, 413 So. 3d 157, 169 (Fla. 4th DCA 2025).

Defendants' challenge to the fiduciary-duty prong of Count IX rests entirely on the absence of a primary breach, and that premise fails. Because the duty arises from the employment relationship rather than from the NDA, the Non-Compete Agreement, or the License Agreement, Count XII is not a repackaged contract claim, and neither the independent tort doctrine nor the economic loss rule reaches it. *Elec. Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518 (Fla. 3d DCA 1986), on which Defendants rely, holds only that a breach of contract is not negligence absent independent tortious conduct; Plaintiffs plead no negligence claim. Count XII pleads the duty as arising from Marino's "position of trust and confidence." (Doc. 16 ¶ 189.)

### C. Count IX is not displaced, because it rests on material distinctions from the trade secret claims.

FUTSA displaces "conflicting tort, restitutory, and other law of this state

providing civil remedies for misappropriation of a trade secret," but not "other civil remedies that are not based upon misappropriation of a trade secret." FLA. STAT. § 688.008(1), (2). The test is "whether allegations of trade secret misappropriation alone comprise the underlying wrong." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018).

*Sentry*, on which Defendants rely, applies that test both ways. It displaced the conversion, unfair competition, and FDUTPA counts, which rested on the "tak[ing]" of the same trade secrets, but preserved the tortious interference counts because, although both relied on misappropriation as the "improper means," "the factual underpinnings of these claims are sufficiently distinct." *Id.* at 1295.

This Court has also recognized that displacement is "typically decided at the summary judgment stage," because "[i]f it is determined at a later time that there are no trade secrets, th[e]n it would follow that the [other tort] would not be based on a misappropriation of trade secrets and should not be displaced." *Centralsquare Techs. LLC v. National Board of Boiler & Pressure Vessel Inspectors*, 2026 U.S. Dist. LEXIS 73588 (M.D. Fla. Apr. 2, 2026). On facts closely resembling these, the court held that "[e]ven if the competing product ultimately does not qualify as a trade secret, aiding and abetting a breach of fiduciary duty may still be actionable." *Id.*

Count IX falls on the preserved side of that line, and the pleading makes

the distinction structural. The counts displaced in *Sentry* "re-allege[d] all the prior allegations of the Complaint." Count IX incorporates only paragraphs 1 through 88 and expressly declines to incorporate any preceding count. (Doc. 16 ¶ 170.) The conduct it alleges is not the taking of a trade secret, and would remain wrongful even if Plaintiffs' compilations were held not to qualify as trade secrets.

## IV. The Punitive Damages Allegations Are Properly Pled.

### A. A Rule 12 motion is not the vehicle for attacking a demand for punitive damages.

Defendants' fifth ground is procedurally misconceived. Punitive damages are a remedy sought with a substantive claim, not an independent cause of action, and a Rule 12(b)(6) motion tests whether a claim has been stated — it does not lie against part of a prayer for relief. *MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co.*, 123 F. Supp. 3d 1332, 1341 (M.D. Fla. 2015).

Rule 12(f) fares no better. A motion to strike is "a drastic remedy" that courts disfavor. *Thompson v. Kindred Nursing Ctrs. East, LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). Courts in this District strike a damages demand only where there is no legal entitlement to the damages at all. *Reign 1 LLC v. Pro 1 Elec., Inc.*, 2024 U.S. Dist. LEXIS 218459, at *43–44 (M.D. Fla. Dec. 3, 2024) (collecting cases). Punitive damages are recoverable in Florida for tortious interference, and Defendants do not contend otherwise. Their argument is that the supporting allegations are insufficient — factual

sufficiency, not legal entitlement. Arguments raising mixed questions of law and fact cannot be resolved on a motion to strike. *Id.* at *44.

Nor does section 768.72 supply a pleading requirement. Defendants concede that "[f]ederal pleading standards govern," and that concession is correct: the statute's requirement of leave of court and an evidentiary proffer conflicts with Rule 8(a)(3) and does not apply in federal court. *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001).

**B. The allegations are specific and sufficient in any event.**

Paragraphs 161 and 169 plead a dated sequence: written notice of Marino's covenants to Cavan on February 24, 2026 and to Edge personally on March 3, 2026; a March 11 deadline to remediate, which Edge declined; continued employment of Marino and continued use of his qualifying-agent license to compete; and, after suit was filed, Cavan's release of Vallario and Sherman — the two employees Marino had solicited — while retaining Marino himself.

Defendants' two responses both depart from the pleading. They say the continued engagement was not egregious because "the amended complaint itself concedes at paragraph 81" that the non-compete's authenticity was in question. Paragraph 81 pleads the opposite: that Cavan's "only excuse" was "a frivolous attack on the authenticity of the executed Non-Compete Agreement." Defendants characterize the release of Vallario and Sherman as "remediation,

not malice," but paragraph 77 pleads it as evidence of knowledge: Cavan shed the two solicited employees once litigation began while keeping the licensed qualifying agent it needed.

*Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.5 (11th Cir. 2020), does not assist Defendants. It applies Georgia law, and the footnote Defendants cite dismissed nothing: it observes that the plaintiff's punitive damages allegations were unintelligible because his was a shotgun complaint in which every count incorporated "each and every allegation" before it. The amended complaint here is the opposite — every count identifies the paragraphs it incorporates and disclaims incorporation of preceding counts. (*E.g.*, Doc. 16 ¶¶ 152, 162.)

Finally, Defendants' request that the Court preclude financial-worth discovery is not properly presented on a Rule 12 motion. No such discovery has been served and no dispute is ripe. If and when it is sought, Defendants may seek a protective order on a developed record.

## V. Paragraph 167 Should Not Be Stricken, and No More Definite Statement Is Warranted.

### A. The clause Defendants ask the Court to strike does not appear in the amended complaint.

Defendants ask the Court to strike the following language from paragraph 167: "and the making of false representations to Plaintiffs' customers, vendors, and business partners." That language is not in the

amended complaint, which reads in full:

> Defendants used improper means to interfere with Plaintiffs' relationships, including, without limitation, the misappropriation and use of Plaintiffs' Confidential Information and Trade Secrets, breach of binding restrictive covenants, and the making of false representations to customers and vendors.

The pleading contains no reference to "Plaintiffs' customers, vendors, and business partners," and none to "business partners" at all. Defendants repeat the misquotation three times, including at paragraph 6 of their conclusion, where they ask the Court to strike that precise string. (Doc. 18 at 3, 16–18.) The Court cannot strike language a pleading does not contain.

**B. The clause is in any event not subject to Rule 12(f).**

Striking is a drastic remedy, appropriate only where the challenged matter bears no possible relation to the controversy. *Thompson*, 211 F. Supp. 2d at 1348. False statements to customers and vendors bear an obvious relation to a claim for interference with customer and vendor relationships. Defendants' real complaint is that the allegation may lead to discovery, which is not a ground under Rule 12(f).

**C. Rule 9(b) does not apply to Count VIII.**

Defendants assert the clause sounds in fraud but never explain why, and they cite no decision applying Rule 9(b) to a claim for tortious interference. The burden of establishing that the heightened standard applies is theirs. *Cf. Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007) (declining to apply Rule 9 where the movant "fail[ed] to cite any law

whatsoever”).

Whether Rule 9(b) governs turns on the underlying allegations rather than how a claim is styled: a claim sounds in fraud where its allegations track the elements of common law fraud, including reliance. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293–96 (11th Cir. 2025). Count VIII’s elements are a business relationship, Defendants’ knowledge of it, intentional and unjustified interference, and resulting damage. Neither misrepresentation nor reliance is among them, and Plaintiffs plead no reliance — the very feature that made the claim in *Pop* sound in fraud.

The reference to false representations is one item in an expressly non-exhaustive list of improper means, alongside misappropriation of Confidential Information and breach of binding restrictive covenants. This Court reached the same conclusion in *Centralsquare*, holding that allegations “less about deceiving customers with an intent to harm them and more about unfairly using a competitive advantage” do not sound in fraud. 2026 U.S. Dist. LEXIS 73588, at *4. In any event, the remedy would be leave to replead, not an order striking the clause.

**D. Rule 12(e) is not a substitute for discovery.**

A more definite statement is available only where a pleading is “so vague or ambiguous that the party cannot reasonably prepare a response.” FED. R. CIV. P. 12(e). Such motions are disfavored in this District. *Jolly v. Hoegh*

*Autoliners Shipping AS*, 546 F. Supp. 3d 1105, 1119 (M.D. Fla. 2021).

Defendants cannot meet that standard, and their own filing shows it. They have submitted a nineteen-page motion engaging with the amended complaint count by count and paragraph by paragraph. A party able to do that is plainly able to prepare a response.

What Defendants actually seek — the identity of each speaker, recipient, date, and statement — is discovery. "[T]he purpose of a more definite statement is to rectify unintelligibility in a complaint, not to provide more details that can reasonably be left to discovery." *Jolly*, 546 F. Supp. 3d at 1119. Rule 12(e) is not "a substitute for discovery." *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss and Motion to Strike (Doc. 18), except as to the three matters resolved at the outset, and grant such other relief as the Court deems just and proper.

Dated: August 24, 2026

Respectfully submitted,

By: */s/ David H. Haft*
David H. Haft, Esq.
DAVID H. HAFT, P.A.
1526 Cardinal Way, Suite A
Weston, FL 33327
Tel: (954) 459-1358
Email: david@dhaftlaw.com

And

Yifat V. Schnur, Esq.
YVLS LAW
22 Prescott Street
Edison, New Jersey 08817
Tel: (347) 268-5347
Email: Yifat@yvlslaw.com
*Pro Hac Vice Admission Forthcoming*
*Attorneys for Plaintiffs CJ's Power Systems, Inc. and Paramount Power, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ David H. Haft*
David H. Haft, Esq.